UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


WENDY LOUISE DIAMOND,

    Plaintiff,

v.                                                                                          Case No. 3:13cv542/CJK

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MEMORANDUM ORDER

    This case is before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Wendy Diamond's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.  The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73 for all proceedings in this case, including entry of final judgment.  Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence.  The decision of the Commissioner, therefore, will be affirmed.


Case No. 3:13cv542/CJK

## ISSUES ON REVIEW

Plaintiff, who will be referred to as claimant, plaintiff, or by name, raises the following issues on appeal: (1) the ALJ failed to fully and fairly develop the administrative record; (2) the ALJ failed to take into account the side effects of medications and properly evaluate subjective complaints of pain and dysfunction; (3) the ALJ failed to comply with the HALLEX procedures in soliciting post-hearing evidence; and (4) the ALJ erred by posing hypotheticals to the vocational expert that did not reflect the specific capacity/limitations established by the record as a whole.

## PROCEDURAL HISTORY

Claimant applied for DIB and SSI on June 10, 2009, alleging disability beginning on July 31, 2007.  T. 31, 179-90.[1]  Plaintiff's applications initially were denied, and the denial was upheld on reconsideration.  T. 106-09, 112-20, 123-28.  Claimant filed a request for a hearing on March 26, 2010.  T. 129-31.  Plaintiff's request was granted, and a hearing was conducted on October 26, 2011.  T. 54-97.  On February 15, 2012, the administrative law judge ("ALJ") found claimant not disabled as defined by the Act.  T. 31-48.  Claimant requested review by the Appeals Council, which denied her request.  T. 12-17.  The ALJ's decision thus became the final determination of the Commissioner.

## FINDINGS OF THE ALJ

In his written decision, the ALJ made a number of findings relative to the issues raised in this appeal:

---

[1] The administrative record, as filed by the Commissioner, consists of nine volumes (docs. 14-1 through 14-9) and has 541 consecutively numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

- "The claimant has not engaged in substantial gainful activity since July 31, 2007, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*)." T. 36.

- "The claimant has the following severe medical impairments: bilateral carpal tunnel syndrome, mild lumbar spine degenerative disc disease/degenerative arthritis, mild hip arthritis, and obesity (20 C.F.R. 404.1520(c) and 416.920(c))." T. 36.

- "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 405.1525, 404.1526, 416.920(d), 416.925 and 416.926)." T. 38.

- Claimant has the residual functional capacity ("RFC") "to perform many elements of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). However, the claimant cannot perform a 'full range' of light work as defined in SSR 83-10. For example, the claimant can stand no more than two hours at a time and walk for thirty minutes at a time. She can stand and walk approximately four and a half hours in an eight-hour workday." T. 38. Claimant can sit for two hours at a time and for six hours total in an eight-hour workday. T. 38. Claimant can never climb ladders, ropes, or scaffolds, and she can never crawl. T. 38. Plaintiff "can lift and carry fifteen pounds occasionally or ten pounds frequently. The claimant can lift no more than ten pounds between the knee and chest levels. She can work with the fingers and hands, including fine manipulation, no more than fifty percent of an eight-hour day." T. 38. Claimant can occasionally reach overhead and frequently reach laterally and forward. T. 38. "The claimant can perform only brief and intermittent

hand-intense activity, such as data entry, only for periods of five minutes for no more than two to three times per hour; however, this would require ergonometric support and wrist braces." T. 38-39.

- "The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965)." T. 46.

- "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a))." T. 46.

- "The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2007, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g))." T. 47.

## FACT BACKGROUND AND MEDICAL HISTORY[2]

At the time the ALJ rendered his decision, plaintiff was forty-eight years old, had a high school diploma and a two-year Associate's degree, and lived with her husband and two of her four children, the youngest of whom was six years old. T. 62, 65-66, 178, 465. Plaintiff spent the bulk of her career as a collections manager. T. 62, 377. When she was laid off, plaintiff enrolled in college, purportedly to fulfill her dream of becoming a middle school teacher. T. 66, 81, 465. Plaintiff took four courses each semester to receive the maximum benefits available to help support her

---

[2] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record. Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

Case No. 3:13cv542/CJK

family.[3] T. 66, 81. At the time of the hearing, plaintiff had completed most, if not all, of the course work required to earn her degree but needed to finish her student teaching. T. 67. She lost funding after she exceeded the allotted number of credit hours. T. 465. Plaintiff ultimately earned a college degree, but not in middle school education.

While still working, plaintiff developed bilateral carpal tunnel syndrome, for which she received workers' compensation benefits until she settled her claim in May 2010. T. 63. She had endoscopic surgery on each wrist, followed by physical therapy, with no relief except for that provided by paraffin wax dips. T. 288-90, 292-96, 300-05, 358.

Testing conducted on August 18, 2008, suggested that plaintiff was malingering. T. 298, 307-09. Dr. W. Ian Rogers, a plastic and reconstructive surgeon, opined that plaintiff could type and return to work. T. 298. Although plaintiff returned to work, T. 342-44, she maintained that her symptoms persisted. On October 2, 2008, Dr. Steven C. Kronlage, an orthopedic surgeon, diagnosed unrelieved carpal tunnel syndrome and recommended additional surgery. T. 310. Plaintiff had open carpal release on her right wrist on December 10, 2008, and on her left wrist at some point thereafter. T. 375-76.

Despite having had two surgeries and after steroid injections, plaintiff continued to complain of pain – in her wrists, as well as in her neck and back. T. 370-71, 378, 438-50, 455-57, 481-83. Dr. Robert Cameron, another orthopedic surgeon, limited plaintiff to light duty work that did not require lifting more than five

---

[3] The family receives Medicaid benefits. T. 66, 81. Plaintiff's husband also applied for disability benefits after he closed his failing business. T. 465.

to ten pounds with the right upper extremity. T. 372. Dr. Cameron found plaintiff close to maximum medical improvement on April 7, 2009, and recommended a functional capacities evaluation, which was performed by J.L. Irving, M.S, CEES, on May 5, 2009. T. 370, 377-81. Irving found that plaintiff had a work tolerance level in the sedentary to light range. T. 377-81. In particular, Irving found that plaintiff could lift and carry up to fifteen pounds; could lift objects greater than ten pounds only between the knee and chest level; could perform minimal to no step ladder climbing; could not crawl; and could perform hand intense activities, such as data entry, for brief and intermittent time periods of five to ten minutes, two to three times an hour, with appropriate support and neutral wrist positioning. T. 381.

Plaintiff visited the office of Dr. Edwin Taylor, a family practitioner, for carpal tunnel symptoms, headaches, and low back and right hip pain. T. 438-39, 447-49, 451-57, 487-89, 494-96, 527-30. An MRI of plaintiff's lumbar spine showed degenerative changes at L5-S1 and mild lateral bulges at L3-4 and L4-5, but no stenosis. T. 498, 510. According to Brandy Franklin, a physician's assistant in Dr. Taylor's office, "there [was] not a lot showing on her MRI that deem[ed] additional treatment." T. 519. Franklin thus referred plaintiff to physical therapy and instructed her to follow up in six to eight weeks. T. 519.

At plaintiff's request, Dr. Taylor completed a Medical Verification on June 21, 2011, indicating that plaintiff could work up to ten hours a week doing activities involving little strain or demand. T. 490. Dr. Taylor's office also noted that plaintiff could not attend the training required to receive cash assistance. T. 491-93, 524-26. On November 10, 2011, Franklin completed an Impairment Questionnaire essentially indicating that plaintiff was unable to work. T. 499-503. Plaintiff submitted the form

to the Appeals Council – with Dr. Taylor's signature – along with a list of her medications. T. 530-34, 536-41. Plaintiff submitted additional evidence to the Appeals Council, but it was returned to her because it related to the time period after the ALJ's decision.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards. *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at 1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the

[Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *See Flynn v. Heckler*, 768 F.2d. 1273, 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[4]

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

---

[4] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

Case No. 3:13cv542/CJK

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.[5]

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

"[R]esidual functional capacity is the most [claimant] can still do despite [claimant's] limitations."[6]  20 C.F.R. § 404.1545(1).  The ALJ establishes residual

---

[5] Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

[6] In addition to this rather terse definition of residual functional capacity, the Regulations describe how the Commissioner makes the assessment:

> (3) Evidence we use to assess your residual functional capacity. We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. (See § 404.1512(c).) However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get

functional capacity, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence, and (2) the claimant's subjective complaints (generally complaints of pain). Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step five.[7] Often, both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict and that conflict leads, as in this case, to the points raised on judicial review by disappointed claimants.

## ANALYSIS

As set forth above, claimant argues that the ALJ erred in a number of ways. First, she argues that the ALJ failed to fully and fairly develop the administrative record. In particular, plaintiff maintains that the ALJ mischaracterized her school performance when relying on her ability to attend and excel in college in determining that she was capable of performing semi-skilled work. T. 47. According to claimant, although she graduated from college ten months after the ALJ's decision, she did not obtain a degree in education and did not obtain any honors or distinction, as the ALJ indicated, instead graduating with a 3.33 G.P.A. The fact that plaintiff ultimately did

---

medical reports from your own medical sources. (See §§ 404.1512(d) through (f).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 404.1513.) We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons. (See paragraph (e) of this section and § 404.1529.)[.]

20 C.F.R. § 404.1545(a)(3).

[7] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps." 20 C.F.R. § 404.1520(a)(4).

Case No. 3:13cv542/CJK

not obtain the degree she initially sought or graduate with honors or distinction does not render the ALJ's decision erroneous. Indeed, the ALJ properly characterized the evidence that was before him at the time of his decision. Even if the ALJ erred with regard to plaintiff's school performance, such error was harmless as it would have had minimal, if any, impact on the ALJ's conclusion.

In support of her contention that the ALJ failed to fully and fairly develop the administrative record, plaintiff also argues that after the ALJ decided to afford little weight to the records of Brandy Franklin, the ALJ should have obtained updated records from Dr. Taylor. Based on the record before the court, it appears that the ALJ did exactly as plaintiff contends he should have done. T 481-98. Indeed, the record reflects that the ALJ obtained updated charts from Dr. Taylor. T. 481-98. No merit, therefore, appears in plaintiff's first assignment of error.

Turning to plaintiff's second assignment of error, plaintiff argues that the ALJ failed to take into account the side effects of medications and properly evaluate subjective complaints of pain and dysfunction, which she says can reasonably be accepted as consistent with the objective medical evidence. Contrary to plaintiff's assertions, the ALJ plainly considered pain and medications when he assessed plaintiff's credibility. The ALJ noted inconsistencies in plaintiff's testimony regarding whether she actually took the pain medications prescribed for her. T. 42. As the ALJ pointed out, plaintiff initially testified that she refused to take narcotics because she was caring for her young child; she later testified that she took narcotics for headaches and carpal tunnel syndrome; she then testified that she had not taken narcotic medications for nearly a year. T. 42. The treatment notes also are inconsistent regarding plaintiff's pain medication. T. 42.

Because plaintiff bases her claim upon pain, the ALJ was required to make a credibility determination. *See Shallow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (noting that "the ascertainment of the existence of an actual disability depended on [the ALJ's determination of] the truth and reliability of [the claimant's] complaints of subjective pain").[8] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily and effectively treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra*, at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] alleges] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

If the Commissioner refuses to credit the plaintiff's subjective testimony concerning pain, he must do so explicitly and give reasons for his decision in that regard. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the

---

[8] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

testimony is to be accepted as true as a matter of law. *Holt*, 921 F.2d at 1223; *MacGregor*, 786 F.2d at 1054.[9] Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations, but it cannot merely be a broad rejection, which is insufficient to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based on substantial evidence. *Wilson*, 284 F.3d at 1225-26; *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F. Supp. 2d at 1259.

Here, the ALJ considered plaintiff's medical conditions and records, her daily routine, and her testimony regarding her use of pain medication. Based on all of the evidence, including plaintiff's MRI results, the ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of her pain not fully credible. The ALJ's decision was abundantly reasonable in that regard.

---

[9] Relying upon the earlier case of *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir.1982), courts in the Eleventh Circuit have retreated from *MacGregor* and are now generally opting for remand in cases of inadequate credibility determinations (as well as cases involving rejection of treating physician opinion). *See, e.g. Lawton v. Comm'r*,431 F. App'x. 830, 835, 2011 WL 2471475, *4 (11th Cir. June 22, 2011); *see also Albery v. Comm'r*, 2012 WL 2589297. *10 (M. D. Fla. June 7, 2012) ("The Eleventh Circuit has recently receded from [the *MacGregor*] language.").

In support of her third assignment of error, plaintiff argues that the ALJ failed to comply with the HALLEX procedures in soliciting post-hearing evidence. Specifically, plaintiff contends the ALJ failed to comply with procedures set forth in HALLEX 1-2-5-30 and 1-2-5-35 in failing to proffer the evidence to plaintiff and/or plaintiff's counsel. The undersigned disagrees. The evidence to which plaintiff refers was submitted by her attorney. As a result, no proffer was required. *See* Hearings Appeals and Litigation Law Manual (HALLEX) 1-2-7-30 (stating that proffer is not required when evidence is submitted by claimant's representative).

Finally, plaintiff argues that the ALJ erred by posing hypothetical questions to the vocational expert that did not reflect the specific capacity/limitations established by the record as a whole. As the Eleventh Circuit has explained, "[i]f nonexertional impairments exist, the ALJ may use Medical–Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform." *Wilson*, 284 F.3d at 1227. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* In this case, the ALJ posed the following hypothetical to the vocational expert:

> Let's assume that I have before me a younger female. Age is approximately 44 to 48 years of age, with a history of work as you just described, a high school diploma, two-year high college degree, and some additional uncompleted four-year college training in the area of education. Let's further assume that the same individual could perform – this may take a little while, so just bear with me here.

> Could perform elements of both a sedentary and light range of work. In particular, they would have some postural restrictions in terms of a complete inability to climb ladders, ropes, and scaffolds, as well as to crawl. There would be some restrictions in terms of standing longer than about two hours at a time, walking more than about 30 minutes at a time, standing and walking tolerances over course of an eight-hour day would still be probably in the four and a half hour range. Sitting is capable of up to two hours at a time, and probably six hours over an eight-hour workday. In terms of lifting and carrying, I think the total amount occasionally lifted and carried should be in the 15-pound range, with frequent in the 10-pound range. There should be some additional manipulative-related restrictions. No more than say 50 percent of the day should be involved in working with the fingers and hands. The ability to reach overhead is probably no more than occasional, although the ability to reach forward and laterally would still be probably frequent. The restrictions I would say are more related to the ability to manipulate with the hands and fingers as they are, as opposed to reaching. And in terms of fine manipulation with the fingers, I would say no more than 50 percent of a day. So somewhere between occasional and frequent. And the lifting of objects in excess of 10 pounds would need to be restricted between the knee and chest levels. And let's add another specific restriction that flows out of exhibit 9F on page five, in that hand intense activity, such as data entry should be performed for brief and intermittent time periods of say five to 10 minutes, no more than about two to three times per hour. And again, I think that that would need to have some [ergonomic] support, and the individual would still probably need to be using some wrist braces.

T. 90-92. Notably, plaintiff does not specify a single capacity or limitation the ALJ

should have included but did not.  The ALJ's hypothetical, in fact, seems to incorporate all of plaintiff's limitations.  This contention thus likewise is without merit.

**ACCORDINGLY, it is ORDERED:**

1.   The decision of the Commissioner is AFFIRMED and plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income are DENIED.

2.   The clerk is directed to close the file.

**DONE AND ORDERED** this 30th day of January, 2015.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE**